May it please the court, Clark Fisher on behalf of the appellant Garnett Hodge, Ms. Lorish of course appears for the amicus. The issue before the court, and I really think so after listening to the last two cases, is really very straightforward. Whether the government may substitute a new conviction to support a defendant's armed career criminal status when a predicate identified in the pre-sentence report was subsequently invalidated under the Johnson case. But you can really phrase it, I think, a different and even more direct way. The issue here, as to Garnett Hodge, maybe not with other Johnson people, is whether the failure of the government to note this additional act of predicate, either at the time of the initial sentencing, on direct appeal, on a first 2255, or even in its first 2255 response to this successor petition, amounts to a waiver of the right to argue it now. We submit... That's the general issue, but isn't your issue more is there a due process violation here? Well Judge, I think however we phrase it, yes sir, absolutely right. We have to phrase it from a legal perspective so we can understand it's not generally can you do it or is this bad. We need some legal basis and you're saying it's a due process violation. That is correct, your honor, and of course the essence of due process is notice and an opportunity to be heard. And in this case, like every other sentencing, the notice begins with the pre-sentence report. The pre-sentence report in this case... But wasn't this crime listed in the 1991 crime listed in the pre-sentence report? It was listed under a general heading of criminal history. I think that was paragraph 23 of the PSR. Couldn't it be used for enhancement purposes? Perhaps it could have, but it wasn't. Perhaps. It's in the pre-sentence report. You know it could be. Well, it's in the pre-sentence report, but not under the portion of the pre-sentence report, specifically entitled Chapter 4 Enhancements, specifically listed as the predicate felonies, one of the predicate felonies for armed career criminals. We have these two other Maryland drug convictions and we have the Maryland reckless endangerment convictions that we all agree were invalid under Johnson. In that pre-sentence report, there's not a word about this other conviction having any armed career criminal implications. At the initial sentencing, nobody talked about it. Of course, his first appeal was an Anders brief. It didn't come up. But then you'll note from the record that Mr. Hodge did file an initial 2255 in this case, alleging that those Maryland reckless endangerment convictions were invalid under Descamps. This is a pre-Johnson case. In the court's opinion, denying it, there's a footnote in which the court specifically stated he has two, presumably the two originally identified, drug convictions that would qualify him under ACCA. You look at that first 2255 in that footnote, it seems pretty clear that once again, the government and the court are still relying solely on three predicate felonies, one of which we know now is invalid, listed at paragraph 18 of the original pre-sentence report. But when you think of due process, even look to this case, our successor 2255 after Johnson. We filed our motion. Court granted permission to go forward. What is the notice violation when the court simply swaps a predicate offense for another one? You're not challenging this one that's been swapped because it looks just like the rest of them from what I can see. It looks just the same. That's interesting. Why didn't you just do those three there? I don't know why he switched up and went to a different one. Well, Judge, I don't really know the answer to that either. And then the third one looks just like the first two that they didn't pick, which is now being swapped in. But it looks just, they all look the same. Look to me. The Maryland drug convictions, the pleadings, the way they're worded, you're right, all look exactly the same. And, you know, if, in fact, in the first instance, in that first pre-sentence report, if this conviction that we're talking about now had been listed, we wouldn't be here. But, of course, in this case, the government. Back to our due process and waiver issue. Which is where you need to stay. Yes, sir. Because I'll tell you what. The facts of this, to me, sound bad. It sounds like, how do you do this? But when we put it in a due process framework, and what you have is that, particularly in this instance, is on the PSR can be used for enhancement purposes. You go back. You say, I didn't have notice. It's right there in front of you. And it can be used. And it looks just like the rest of them. So I think from the constitutional perspective of due process, it's a difficult case. Well, Your Honor, I'm certainly not going to dispute anything you've said. But I want you to. Well, you need to because what I just said means you need to sit down. You don't want to do that. No, sir. I'm not arguing your case. I'm putting it to you to convince me otherwise on it. Well, then let me do that, Your Honor. Put yourself in the position of Garnett Hodge and his lawyer at the time of this initial sentencing. You get the pre-sentence report. Pre-sentence report says you're an armed career criminal. This is why you're an armed career criminal. Those two Maryland convictions with Maryland reckless endangerment. It says not word one about any other reason that you're an armed career criminal. And at that point, you go forward and rely on the pre-sentence report as it is. The government in that case, back to due process, like they did in the Pettiford case, had every opportunity to say at that time, and Your Honor, in addition to these three, you also have this additional one here. They didn't do it. They didn't do it then. First opportunity. They didn't do it on the first 2255, which shows only the two prior Maryland predicates. And in this case, when we talk about waiver, they didn't do it in their first response here, where the government specifically conceded that he was entitled to be re-sentenced under Johnson. They said one. It really meant two, I think, on the facts. Because he didn't have three serious drug felonies. So when we talk about due process, Your Honor, you've got opportunity one, sentencing. Opportunity two, direct appeal. Opportunity three, first 2255. Opportunity four, response to this 2255, and only after we've... So the government waived. That is absolutely our position, Your Honor. And I think that is consistent with a number of the cases that we cite in our brief from the 11th and 8th Circuit. And certainly you are not bound by any of that. I wouldn't suggest that. I see no controlling authority one way or the other. But the principles articulated in Bryant, in Canty, in Petit, basically stand for the position. And I think it was the Petit opinion that said the law rightly does not favor do-overs. At what point did he lack notice? You gave several time frames, but it had all these opportunities. Which one of those opportunities did that notice cease from a constitutional perspective to be satisfied for due process? Judge, I would contend that he did not have notice that this additional conviction was being argued as a DACA predicate until the second response. I think it was September 8th, 2016, in this case, after all these other proceedings had taken place. Years had gone by. And, again, we don't place a particularly onerous burden. What's the relationship between waiver and notice? I think waiver would specifically be that you've had an opportunity to do something and you didn't do it. Does that take away notice? I think there's kind of an interesting interaction between those two. Certainly the government had notice. You're saying that the defendant here had notice that the conviction existed and was on the PSR, but did not have the critical notice that the government was going to use it against him to increase his sentence. I think that word, critical notice, is exactly right, Judge Thacker. They certainly had notice the conviction was there. It is listed along with a number of other things on the criminal history portion of the report. But the government intended to say it's an ACCA predicate. No notice until September 8th, 2016, after we had gone through all of these prior proceedings. And it is in that situation. You didn't need it. You didn't need it before then because everybody was agreeing he was under this criminal act. It just kept going along. Supreme Court comes around and then changes the game on it. And that's the point they needed to come with the other one. Well, I think I would respectfully disagree. Even the defendant seemed to agree with it. I don't think there was a challenge to it at that point. This is not the opinion that went to the Supreme Court. This is the one that's benefiting from the Supreme Court and says, oh, this didn't happen. This doesn't qualify. Then they go get another one. Well, Your Honor, I don't believe it's the burden. And I think Ms. Flores will talk a little more about this on the part of the defendant at the time of sentencing when you get the pre-sentence report to basically volunteer. We may have an additional conviction. I think the burden when we talk about waiver. But think about it. The one who did take that case to the United States Supreme Court sort of benefits a little differently than those who don't know about it. The lawyer doesn't make that novel challenge, I guess, and end up with a reversal. What you've got here is you say opportunity, opportunity, opportunity, but the whole opportunity is not necessary because even you agreeing with the prosecutor through the whole process, the Supreme Court comes down and says, oh, no, that one does not qualify. Then they say, well, there's one over here just like the others, and we'll just put that one in. And you say that's a due process violation because he didn't have notice. And I don't know how it figures in with waiver. Waiver is another concept. I got that, but I'm not mixing the two. The pre-sentence report, of course, is the most important document that the defendant receives, the government receives, the court receives at any sentencing proceeding. You are entitled, I think, to argue anything in that pre-sentence report that you find objectionable, and that pre-sentence report is there to give everybody notice. The pre-sentence report here, unlike apparently what was done in the Petterford case, upon which the government relied in its brief, only said these three convictions. The whole waiver argument has some appeal to it. Then I'll go with that one, Your Honor. Well, I don't know if you can because the due process is what you've got here, and due process requires a lot more. Waiver is more of an equitable sort of consideration, and just different things that are there. I don't know. I'm not sure you made that kind of argument. Well, I believe they're both before the court, Your Honor, but due process is notice. Again, I wish I had thought of it, Judge, that critical notice is what he didn't have. But that's not due process. Critical notice, that's not constitutional due process. Notice is what's required, and there's a specific definition. Notice and opportunity to be heard. And I would contend in this case you go on the specific notice that was given. Garnett Hodge, paragraph 18, you are an armed career criminal because of these two convictions, Maryland reckless endangerment. And he says I agree. He said I agree based on the law. And everybody goes up through the system and he never takes it to the Supreme Court. Nothing happens. All of a sudden, the Supreme Court in a different case said, no, that reckless endangerment is not one of them. And then the prosecutor then looks over and says, well, he's one just like the other two there. Because he had a few convictions. He's been around the block. He's definitely been around the block. There's no question about that. But that's not the issue before. Sure. But the issue is can you use that around the block behavior up here that looks just like this. So it's no question those three are good. Your problem is that the government should have been using them the whole time. Waiver, if we can get there on it, seems so unappealing. But due process, I'm having some difficulty with that one. Well, again, Judge, and I would just respectfully say as the lawyer, as the defendant, when you read the pre-sentence report, I don't think you have to go beyond the plain language of it. Take the word critical out of it. You had noticed that the conviction existed, but not noticed that it was going to be used against your client in that way to enhance his sentence. That is exactly correct, Your Honor. And coming back to a point you mentioned, Judge. The other problem with that, though, is the critical notice or the notice, it comes up now because he's there as remanded for sentencing, right? Yes, Your Honor. And so the question is, it seems to me, that the best argument you have is that not waiver, but it's almost like forfeiture. It's a forfeiture matter because waiver is known as you agree by your actions that you're not going to pursue something, and they haven't done that. Or it's done by a statutory process like a repose or latches or something like that. But it seems to be a question of forfeiture, that is, your argument is that you're back there now to look at sentencing in the light that they now don't have sufficient predicates. And they're forfeited in it right now to try to almost like really prosecuting another aspect of sentencing, which would be an enhancement as opposed to resentencing. It's almost a forfeiture argument. But I agree with Judge Wynn's problems. I agree because you can't point to anything in the Sixth Amendment that really has been violated, could you, in terms of due process. Well, again, Your Honor, it just seems to me that Paragraph 18 says what your ACCA convictions were. This one wasn't there, and so that notice didn't apply. But let me, if I may briefly respond to what you just said. The government also in this case filed an 851 notice, and they relied on two convictions there, one of which the pre-sentence report noted you can't use anymore because it's no good under the Simmons case. They've got an attempted trafficking. But what if they hadn't put that attempted trafficking in there? Could the government then, after appeal, come in and say, well, no, we could have used this other drug conviction? I would contend it's the same principle, and the answer would be no. And I think that does get into notice, and that is an element of due process. Thank you very much. Thank you. Ms. Lorish. May it please the Court. Lisa Lorish on behalf of the amicus Tony Johnston. Thank you for the opportunity to address the Court from Mr. Johnston's perspective, which is essentially to ensure that the conversation you were just having with Mr. Hodge's counsel about whether or not there is a due process violation, what the merits of his appeal are, how this case should be resolved, and that it shouldn't be resolved on procedural default grounds. The Court shouldn't resolve the case on procedural default grounds, as was suggested in the government's brief, because Hodge is obviously not making an argument now that he failed to make previously. There's not a default issue here. But the government is trying to make an argument now that it failed to make previously. Precisely. The government is making an argument now that it failed to make previously, when it, I would note, had the burden to prove sentencing enhancements at a sentencing. But Hodge is not making such an argument. And in speaking to counsel for the government prior to this argument this morning, my understanding is that the government doesn't intend to really argue procedural default, but to instead suggest that a defendant can't challenge the existence or the validity of a prior conviction if it appears in a pre-sentence report. So I don't believe that procedural default will really be an issue that's presented by the government today. But because it is an issue that's raised in the brief, and because it is an issue that district courts are using right now, such as a district court in my client, Mr. Johnston's case, to prevent petitioners from having successful 2255 petitions, it would be an opportunity for the court to clarify that this is not a procedural default situation. That a defendant such as Mr. Hodge, or such as Mr. Johnston, my client, they are not proactively required to go out and get a district court to make rulings about issues that aren't relevant at sentencing because of the very point you made, Judge Wynn. There were lots of other ACCA predicates. Everyone agreed counted at the time. So we don't need to go get a ruling on something else that doesn't matter at your sentencing. When everyone agrees, you have three that did matter. What is the issue in this case, though? The issue in the case is if we can deal with procedural default. But the question from the defendant's perspective is whether there was a due process violation. I agree. That's a positive. All we need to decide is just that. I think that that's the merits of the argument in this case, are whether or not there's a due process violation. What's interesting is that the 11th Circuit says, no, you can't use it, but they did it on waiver. Not due process. But the waiver doesn't seem to be the issue here, at least in terms of having been adequately argued. Well, with respect to the merits of Mr. Hodge's appeal, I'm not going to take a position. Does that concern you? Is that part of the issue you're concerned with, or are you just here on procedural default? I'm here on procedural default grounds because my client has been denied the ability to pursue his 2255 because even though in his pre-sentence report there were no findings made about any active predicates, the district court found that he couldn't later challenge whether two drug convictions counted as one or two, even though under the present law we all agree they only count as one active predicate. So that was only on procedural default grounds. So that's why my concern is procedural default. You're in an interesting posture. I think Mr. Hodge wants his 20 credits to be used in his case over there, not in your client's case, even though you think there would be some benefit if you go in your client's direction. But the ultimate question here, once you get beyond procedural default, the question is, from his perspective, due process. I agree, Your Honor. You don't want to talk about due process. Well, I've not taken a position as to the merits of the case in my amicus. I do have an opinion, which is that – Well, you're an amicus, right? I'm an amicus. An amicus means, as the Latin says, that you're a friend of the court. That's right. And so as our friend, we're asking you to give us your pontification, if you will, as to what looking forward in the Sixth Amendment aspect of due process, what might be engaged or something, the issues there. So you're here now, and you're a friend, and we've permitted you to file it. Thank you. I do think that the argument, the example that Mr. Hodge's counsel ended on, the idea of the 851 notice, is an important one for the court to consider. In any context where you have a criminal history that's reviewed in a pre-sentence report, just because someone has a conviction doesn't mean the government's using it actively against that person to enhance their sentence. There are lots of things that appear in a pre-sentence report that haven't been found by the preponderance of the evidence, which is the government's burden. But the issue is whether you have notice that this is a conviction and that it's before the court. It clearly has notice at that point. The defendant focused on opportunity, that they had all these opportunities to use it and didn't use it during that time period. I think the court could look at the fact that their notice, by being listed as a criminal conviction, is different than, for example, the notice that the government's required to file to have an 851 notice enhancement. Just because someone has a prior conviction doesn't mean it's going to be used to trigger mandatory minimums. It doesn't mean in the drug context or in the armed career criminal context. Just existing on the pre-sentence report is not enough to trigger statutory and mandatory minimums in other contexts. And, in fact, the government chose not to use it in this case. Exactly. They made that decision. Just showing up on the pre-sentence report doesn't mean that if Mr. Hodge was successful and goes back for resentencing, they can say, well, now we're going to go for the 20-year mandatory minimum because you had notice, you had a prior drug conviction. No, we didn't file an 851 before, but you had notice. So it does actually matter what the government's relying on beyond just being listed in a defendant's pre-sentence report. So I do think that that's the strongest due process argument. You found a case that said it, other than you standing up here and the other counsel? Well, I think there are cases. I don't know of a case that has said anything close to what you just said. At least a defendant in a procedure like this, when you go back, that's a due process violation when it exists within the report. 11th Circuit, as I told you, relied on waiver. They didn't go there. So I'm not aware of specifically if the words due process appear in this case. But I know that in the United States versus Parker. It sort of helps us if we're going to talk about the constitutional aspect of it. I agree. And I'm not fully prepared to talk about the due process argument. In the pre-sentence report, as I understand it, it listed two convictions under the enhancement section of the pre-sentence report. Both parties, I assume this, I mean, this is the procedure as I understand it. Both parties had the opportunity to review that report and to make objection or comment on it. And that's what you rely on going into the sentencing. The government apparently chose not to say, hey, let's add these others to that section of the report to enhance the sentence. So that you would know that's what's going to be happening at the sentence. And the court would know. That's correct. That's correct. But it's correct if you want to say it's a waiver, not a due process violation, right? And that may be correct, Your Honor. I got you. Thank you very much. Thank you, Counsel. Mr. Joseph. Thank you, Members of the Court. First, I want to say this is not an 851 case. In 851, the statute requires notice. So that's not a valid, I don't think that's a valid analogy to draw. I would submit in this case that. It requires notice at the time you use it. But there was an argument that supposing you didn't use it and then something else fell through and you came back and you said, well, it's here because it's in your criminal history and now we're giving you notice. It would be back to where we are. So you don't resolve it by saying this is not 851. I understand what Your Honor is saying. But I'm just saying that 851 is a statute that requires the government to actually file a notice. I would like to know why the government should get a do-over here. I would say this, Your Honor. The government didn't waive anything and it's not a matter of a do-over. In all the cases that are before the court cited in the briefs, only Bryant is the only one that was on a 2255. And in that case, and then in all the cases that are cited by the defendant, there was an actual live controversy before the district court as to something involving an ACCA predicate. And the government in each one of those cases didn't do something. The government was on notice. It was an actual ball that was in contention. It was an actual both sides knew there was a fight about something. If the defendant had failed to do something at the sentencing, raise an objection on even something that seemed futile at the time, they couldn't go back and get a do-over. They don't get to go back. Your Honor, the government's not asking for a do-over. I think that's an easy argument that the defendant is making here as the government's getting all these multiple bites at the apple. I would submit that the defendant is the one getting the multiple bites. The defendant got the benefit of Johnson and now is turning around and saying to the district court, you can't use what's in the PSR. You have to ignore it. What's in the PSR under the enhancement section? It was not there. Okay. Now you want to put it there. Not really, Your Honor. I want to say that the sentencing court should be able to look at what's in the criminal history. All the other parts of the pre-sentence report. Everything that's in the PSR. How much of the pre-sentence report do you get to go back and redo? How far does this go? Your Honor, I understand what the court is saying, but I don't think it's a redo. I think it's more a matter. The only case that I think that really has been cited that deals with this is the Garcia case out of New Mexico, the Tenth Circuit, and the opinion of the district judge is not a model of clarity, but in effect it was the same situation where although there were other facts there that were important, but the district judge, it wasn't in the PS, it wasn't in the section dealing with ACCA, but there was another conviction, a New Mexico conviction for robbery, and the court used it. And on appeal, apparently neither side felt that was a strong issue to argue, and the Tenth Circuit affirmed. Is it critical that it was in the PSR in this case? I think it's important that it was in the PSR. I think that the defendant would have a stronger argument if it wasn't in the PSR. But it's not important where it was located in the PSR, or that the government in response to the PSR chose not to add it to the enhancement section and chose not to fulfill its burden at the sentencing hearing on that particular conviction. Your Honor, my response to that would be for what purpose? Under Rule 32I, the district court can consider all the evidence, but it can say, look, I'm not going to consider something because it's not relevant, or it doesn't add to anything. And what I'm saying to the court is that once a court gets to three ACCA predicates, and once in this case there was no controversy, there was nothing to alert the government to the fact that, oh, we better look around and see if there's something else. I'm not asking you to look favorably to the government. I'm just saying that there was no controversy. The government was not limited to just three predicate offenses. In the Pettiford case in particular, the government put forth five. Yes, Your Honor. And when two of them became infirmed because of Johnson, that left three. Yes, sir. And the court says, okay, that's good. And certainly couldn't have a problem with notice violations or due process in there because it's five. That's correct, Your Honor. Here, you had that opportunity, but you only stopped at three. And why in the world you didn't pick the third one that looked just like the other two, I don't know. That's a whole different question. But you did. You picked one, and then that ultimately was turned out to be not good. And so now you've got two. And it's not like the Pettiford case where you charged four and one went away, and now you have three. What you now have is a situation where you go back where you've been agreeing all the time that this is okay, and now you found out it's not. You go back, even initially, you say, okay, we'll go back and re-sent us. And then you come back and say, whoa, we found one. And then you put it in. I think we've got copies of the judgment. So, you know, the waiver argument, at least in terms of the government choosing, it looks to me like they chose to use three when they could have used more, seems to have some appeal here. It's easy in this setting to say, well, the government chose. The government made an active choice. I would just submit that this was a run-of-the-mill case. There were three ACCA predicates. Nobody focused on it. Nobody raised any issue. The defendant didn't contend any different. It was just not. Okay. My problem with this whole thing is that a defense attorney at sentencing has to object to everything that exists, that possibly could exist, that might exist, or they waive it. Why shouldn't the government, who has the burden, be required to do all that they can, all that's necessary to enhance? In this case, Your Honor, I submit that at the time, no, the government did all that was necessary. And as far as due process is concerned, the defendant did get a chance to object to it. When it came back, it wasn't a remand. It was a 2255 after Johnson. When that issue arose, the defense counsel filed two pleadings. The defendant, through counsel, had a chance to object, had notice, had a chance to object, had expressed their objections about whether that conviction could be used. So I submit that it's not just a matter of the government giving the government some special consideration. I would say that when the issue became important, when it was relevant, either side, and I agree that waiver doesn't apply here, excuse me, that the defendant's waiver doesn't apply. That is, when it became important, either side had the right to object, to be heard, to have it litigated. And that's just what the district court did here. The district court let both sides litigate it. Not so much waiver specifically for the defendant here. I think Judge Stackett's question is going to a goose and a gander question. And that is, we have a lot of cases that come up here in which the defendant has failed to bring something up. When it goes back, this court and all courts around have no problem saying, defendant, wait. And now we get this sort of instance in which the government hasn't done something. You're saying, oh, no. We can do this. And I think it's more of a consideration of why should we do this when we have a pretty clear line of cases from the defendant's perspective and they fail to bring something up at a particular time. It's being weighed. Judge Quinn, I think what would be happening if you rule for the defendant in this case, which, of course, you can. But if you rule for Mr. Hodge, what you'd be telling the district courts are they have to do yet one more thing. That is, every time there's an ACCA situation, both sides are going to have to litigate every possible conviction. They'll just have to litigate as much as they think is necessary to get it, which is in every case. I mean, when you've got a bunch of evidence in a case, the prosecutor can litigate and call 100 witnesses or he can call what's necessary. Yes, sir, Your Honor. And you don't get a Johnson case every day. So you're going to know not to put those up from it. So it's sort of telling you pretty clear. For the most part, we know what the offenses are. We're getting there more and more with the Supreme Court cases. So I don't think the sky is going to fall on you for having to do this. It's going to happen because it's going to become clearer and clearer. The three that are there in this case, you don't have that argument because they are right there. I mean, they look just alike. If those other two weren't any good, this one wouldn't have been any good. It certainly wouldn't have been unduly burdensome. I think you said in order to prove it, you just put the judgment of conviction in, didn't you? Yes, after we sent for it, after the 2255 arose. I'm just saying that this court has never required the government, the court, to anticipate changes in Supreme Court law. But we do require the defense to anticipate changes. Not every time, Garner. Like on 2255, the court doesn't require defense counsel to anticipate changes in the law. So I can understand that you think the government got some special treat here. But this conviction was in the PSR. It was there. It's valid. It exists. And I would just say that what you're being asked to do is to say to a district judge, contrary to what the court has said before on sentencing, you can consider anything in the PSR, what you'd be saying is, no, you can't. Sometimes you can't do it. And it would create some confusion. It would create more work. And it would prolong proceedings. Mr. Joseph, if I understand you correctly, you would agree with Ms. Lorish's point that it's certainly not a procedural default. Because then you said when the time comes as now is when you have to defend it as a defendant. And before you didn't. So you'd agree with her it's no procedural default, is it? My position is this. Generally, yes. My position is that the defendant waives anything that's in the PSR about a conviction. If the defendant doesn't object at the original sentencing, then that conviction is valid. The conviction exists. Whether it's an ACCA predicate or not, I think becomes, at that time it becomes important. That's a different question. Right. That's not procedurally defaulted. No, it's not a procedural default. But when it becomes important, then either side gets the chance to litigate it. And that's all I'm asking for, is either side gets the chance to litigate it. Because the government didn't have a duty to file a notice of enhancement. It was already in the record. It's not a surprise. He knew he was an ACCA defendant. Right. That's my argument. Exactly. And understood because you didn't know you needed. But it's an old expression called belt and suspenders. Are you familiar with that? I'm not familiar with it. You're not familiar with belt and suspenders? No. It just means that, you know, a belt can keep your pants up, but sometimes you wear suspenders just in case it fails. That's what you had. You had three offenses with the same thing, and there's no burden at all. You just put them in. I know two is what you needed, or three, but you needed three, and you went for something else. But the ones that you had were the same ones. If those were good, then the others were good. I mean, you could have. So you made a choice. You made a choice because you had what you believed to be a predicate in the criminal history that you could have put in as the basis for the enhancement, correct? I understand what the court is saying. And you answered my question then. Did you not have a choice to put it in? I don't see it as that. I know you don't see it as that. That's why I'm asking you to ask my question. I'm going to ask what you see. I'm going to ask what was there. Did you have a choice to put it in as a basis for the predicate enhancement? If we had, Your Honor, what the defendant would say. See, you're not answering my question. See, my question is very simple. I'm going to try it one more time. Yes, sir. I'm listening. Did you have, you had the opportunity, if you wanted to, to put it in, whether it was necessary or not, or whether you could be clairvoyant or not, the present sense you had a choice you could have put it in, yes or no? Yes. Okay. And not putting it in was whose choice? I can't agree with you because I don't know. I'm not asking you to agree. I'm asking you to answer my question. Whose choice was it? I don't know that I can answer that. No, you know you don't want to answer it, but I'm asking you to answer it. Can I answer with an explanation? Absolutely, but answer it first. Yes, government's choice. Right. Now, go ahead. Explain that, your answers, as you will. The reason, there's a reason why we didn't do it. It wasn't needed, and we didn't know that it was needed. That's the only reason that it was unnecessary, right? Well, it would have been surplusage. It would have been something that we didn't need. It would have taken the court's time. It would be like me arguing something to you today that has nothing to do with it. How much time does it take to say here's the judgment of conviction? How long was that, two seconds? I don't think we had the actual document at the time, but it was in the PSR. I don't know that I can clarify it any further, but that's my argument. Thank you. Thank you. All right, Mr. Fisher, you have a few minutes. A few. Judge, I would agree and disagree with something that Mr. Joseph indicated. In many ways, maybe this was a run-of-the-mill case, certainly not run-of-the-mill for Mr. Hodge, but on its face, something we certainly see all the time. In each of those cases, under the system we have, we get the pre-sentence report that lists enhancement in criminal history. The government always has the burden of proof in these matters, and it would have been the simplest thing in the world, just like the government did in Pettiford. Not to stop at three, because I think we all know, and certainly the government knew, sentencing law evolves. Simmons, Johnson, things happen. It would have taken maybe a sentence or two in their written response, required by the local rules, or even mentioned the oral argument. Your Honor, in addition to this Maryland reckless endangerment, he has this additional conviction, and there was a choice, be it a choice of inaction or a conscious choice, I don't know, but it was always the government's choice as to what to put forward, and consistent with the various authorities from sister circuits that we've indicated, we ask you to hold the government to its choice. The Petit case, I think, kind of has a good discussion in that footnote that we cite, relating the due process to the waiver issue, when the government tried to substitute a burglary conviction for the first time on post-conviction, said the argument should have been made prior to or during sentencing. For the purpose of allowing the opportunity to object and offer evidence on that issue, and that opportunity is the essence of due process. Yeah, I think I find it interesting that when Hawk was the law in the Fourth Circuit, and Bo Simmons comes along, and then Simmons comes along, and first some of the arguments of the government was, well, you should have argued it. Well, wait a minute, Hawk was there. Well, you still should have argued it. And here now, they have a choice that they should get a mulligan, if you will. Well, Judge, I'll call it a mulligan or a level playing field. I think it works either way. Thank you very much. Thank you. We'll come to our brief counsel and then address our final case.
judges: Roger L. Gregory, James A Wynn, Jr., Stephanie D. Thacker